UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION, § § § § § § § § § § | |
| VS. | Case No. 6:06-CV-550 (LED) |
| TOSHIBA AMERICA INFORMATION SYSTEMS, INC., ET AL., | |

**DEFENDANTS ACCTON TECHNOLOGY CORPORATION, 3COM CORPORATION, SMC NETWORKS, INC., AND D-LINK SYSTEMS, INC.'S REPLY IN SUPPORT OF PETITION FOR A LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE**

## I. INTRODUCTION

Defendants[1] have been forced to undertake the Letters Rogatory process because CSIRO's counsel refuses to make Dr. David Skellern available for a second day of deposition. Dr. Skellern is a third party witness with close business ties to CSIRO, as shown by the submission of his declaration in support of CSIRO's opposition to Defendants' motion for summary judgment. Dr. Skellern was represented by CSIRO's counsel at his deposition and is a material witness to several relevant events in this case that have occurred over a ten-year time period. Indeed, there is no other witness in this case who touches more relevant issues over such an extensive time period. As a result of his involvement, Defendants anticipate that CSIRO will use Dr. Skellern as a witness at trial. In October 2007, on Defendants' initial trip to Australia to depose the inventors of CSIRO's patent, Dr. Skellern was offered up by CSIRO's counsel for one day in conjunction with several other depositions. Defendants' examination of Dr. Skellern was cut short after seven hours without adequate opportunity to fully depose Dr. Skellern on approximately half of the key subject matters on which he possesses relevant and personal knowledge. Moreover, numerous documents related to Dr. Skellern's involvement with these matters were produced by third parties and by CSIRO **after** his first day of deposition.

For the past several months, Defendants have attempted, through the meet and confer process, to arrange a second day of deposition for Dr. Skellern, but to no avail. CSIRO's principal arguments in its opposition to Defendants' request have been that (1) the Court's discovery order prohibits a second day of deposition, and (2) Defendants did not conduct an efficient first day of deposition. Both arguments are simply wrong as explained below.

## II. LEGAL ARGUMENT

### A. THE COURT'S DISCOVERY ORDER AUTHORIZES TWO DAYS OF DEPOSITION.

The parties do not dispute that the Court's Order authorizes two days of deposition for

---

[1] While Accton Technology Corporation, D-Link Systems, Inc., SMC Networks, Inc., and 3Com Corporation are the requesting parties, ALL the defendants in this action support this Letters Rogatory request.

any witness.  Instead, Defendants and CSIRO disagree over whether the two days must be consecutive. The Court's Order provides:

> *Depositions of Parties and Third-Parties*:  The Plaintiff shall be entitled to take five hundred and sixty (560) hours of deposition testimony total of the parties and third-parties (exclusive of designated expert witnesses).  The Defendants shall be entitled to take three hundred (300) hours of deposition testimony of the parties and third-parties (exclusive of designated expert witnesses). <u>No single deposition of any one witness can exceed two consecutive business days, except by mutual agreement</u>.

May 10, 2007 Order, ¶4(c) (emphasis added).  Defendants construe this to limit any single deposition to any two days, absent mutual agreement. Use of the word "consecutive" merely recognizes that most multi day depositions are taken on consecutive days.  This construction makes sense, given the reality that one cannot reasonably forecast whether a deposition will take more than one day until the deposition is commenced and the witness' recollection tested.

In contrast, CSIRO asserts that under the Court's Order, if a second day of deposition is not taken consecutively, it is waived.  This position is incorrect, and unfair.  For example, offering a witness for deposition on a single day would necessarily limit that deposition to one day. Indeed, CSIRO did exactly that with Dr. Skellern. He was only offered for one day, and his deposition was immediately followed on consecutive days by inventor and prosecuting attorney depositions in Australia.[2]

CSIRO's awkward and self-serving construction of the order would require every deposition to be scheduled in consecutive two-day blocks out of concern that the deposing party would waive its right to a second day if the deposition is not taken on consecutive days.  The Court should reject outright CSIRO's opportunistic view of the subject phrase and grant Defendants' Petition for a Letter of Request for a second day of deposition for Dr. Skellern.

---

[2] The first day of Dr. Skellern's deposition took place on October 24, 2007.  The deposition of Ian Albrey was already scheduled for and took place on October 25, 2007, and the deposition of John Deane took place on October 26, 2007.

### B. GOOD CAUSE EXISTS FOR A SECOND DAY OF DEPOSITION.

Good cause exists to allow a second day of deposition of Dr. Skellern. As set forth in the Defendants' Letter of Request, Dr. Skellern was involved in a number of key events related to the '069 patent over a ten year time period. For example, while at Macquarie University, Dr. Skellern was an original collaborator on development of CSIRO's WLAN project. Dr. Skellern's significant background in wireless communications makes him particularly knowledgeable about the '069 patent and the technical issues related to the patent's claims. Dr. Skellern was also a co-founder of Radiata, an Australian start-up company that negotiated the first license for the '069 patent, and he later negotiated the sale of Radiata to Cisco Systems, Inc. Dr. Skellern remained at Cisco to assist in commercializing Radiata's technology, during which time he participated in the process of extending multiple sublicenses by Cisco to other entities and securing CSIRO's permission to do so. Finally, Dr. Skellern was an officer in the IEEE 802.11 Committee, and he has relevant knowledge regarding CSIRO's RAND commitment and the various alternative technologies that existed at the time CSIRO's technology was allegedly adopted in the 802.11a and 11g standards.

The first day of Dr. Skellern's deposition was prior to the Court's *Markman* hearing and therefore focused on technical issues regarding inventorship and claim construction, about which Dr. Skellern proved particularly knowledgeable given his collaboration with CSIRO on its wireless LAN project beginning in 2001. Indeed, months after his deposition, CSIRO obtained an expert declaration from Dr. Skellern in support of CSIRO's opposition to defendants' motion for summary judgment on indefiniteness. Given Dr. Skellern's breadth of relevant knowledge, Defendants were only able to effectively cover half of the relevant subject matters, leaving largely undiscovered Dr. Skellern's knowledge regarding his time at Cisco – which included commercialization of CSIRO's technology and negotiation of multiple sublicenses – and his participation in the IEEE.

Additionally, at the time of Dr. Skellern's deposition, third party Cisco (which possessed Radiata's documents due to its acquisition) had yet to produce the vast majority of its documents

responsive to subpoenas from both CSIRO and Defendants. In the months following Dr. Skellern's first day of deposition, Cisco produced close to 20,000 pages of documents, some produced as recently as the week preceding the filing of this reply brief, which include relevant e-mails from Dr. Skellern.[3] The vast majority of these relevant documents – including a valuation of Radiata's license for the '069 patent – have never been shown to Dr. Skellern. This issue was specifically raised and reserved by Defendants in Dr. Skellern's first day of deposition. In sum, there is more than sufficient good cause to permit an additional seven hours of deposition of Dr. Skellern.

### C.   CSIRO'S CRITICISMS ARE WITHOUT MERIT.

In its opposition, CSIRO grossly mischaracterizes Defendants' meet and confer efforts to obtain a second day of deposition. Defendants informed CSIRO at Dr. Skellern's first day of deposition that they were not closing the deposition, since seven hours was an insufficient amount of time to examine Dr. Skellern on all his relevant knowledge, and since Cisco had yet to produce documents. Following the deposition, Defendants repeatedly raised the issue with CSIRO of whether Dr. Skellern would voluntarily appear for a second day of deposition. At first, CSIRO asserted Dr. Skellern was unwilling to appear voluntarily for a second day of deposition, and only recently began raising its misguided interpretation of the Court's Order as an additional basis for resisting a second day of deposition. CSIRO's continued refusal to cooperate left Defendants with no alternative but to proceed with the letter of request process as prescribed by the Hague Convention on the Taking of Evidence.

### III.   CONCLUSION

The Discovery Order does not prohibit Defendants from deposing Dr. Skellern for a second day. Dr. Skellern is a material witness whose testimony at trial, whether live or by deposition, is virtually assured, and Defendants need to depose him for a second day to discuss topics that Defendants could not raise with Dr. Skellern on the first day. To avoid inconvenience

---

[3] Cisco produced documents regarding Dr. Skellern as recently as September 5, 2008.

4

to Dr. Skellern, counsel for Defendants will travel to Sydney, Australia to conduct the deposition.  As CSIRO refuses to offer Dr. Skellern for a second day of deposition, Defendants now respectfully request that this Court grant the instant petition and issue a Letter of Request to the Supreme Court of New South Wales to allow the deposition of Dr. Skellern.

Dated:  September 12, 2008

Respectfully submitted,

By: */s/ William Cornelius*
William J. Cornelius, Jr.
State Bar No. 04834700
WILSON, ROBERTSON & CORNELIUS, P.C
One American Center
909 ESE Loop 323, Suite 400
Tyler, TX 75701
Tel: (903) 509-5000
Fax: (903) 509-5091
wc@wilsonlawfirm.com

Richard C. Vasquez – Lead Attorney (*Pro Hac Vice*)
Jeff T. Lindgren (*Pro Hac Vice*)
Eric W. Benisek (*Pro Hac Vice*)
Craig E. Davis (*Pro Hac Vice*)
Stephen C. Steinberg (*Pro Hac Vice*)
Avin P. Sharma (*Pro Hac Vice*)
VASQUEZ BENISEK & LINDGREN LLP
3685 Mt. Diablo Blvd., Suite 300
Lafayette, CA  94549
Telephone:(925) 627-4250
Facsimile: (925) 403-0900
rvasquez@vbllaw.com
ebenisek@vbllaw.com

*Counsel for Defendants Accton Technology Corp., SMC Networks, Inc., 3Com Corporation, and D-Link Systems, In*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 12, 2008.  Any other counsel of record will be served by First Class U.S. mail on this same date.

*/s/ William Cornelius*